**GAGAH ALAMSYAH**

**PLAINTIFF**


**VERSUS**                                                    **CIVIL ACTION NO.**
                                                             **1:14-cv-68-HSO-RHW**


**MICHAEL V. LOMBARDI, , U.S.**
**OPPORTINITIES LLC, AND ROYAL**
**HOSPITALITY SERVICES, LLC.**

**DEFENDANTS**

---

## SECOND AMENDED COMPLAINT

      COMES NOW Plaintiff Gagah Alamsyah, and files this Complaint against the Defendants, pursuant to the Fair Labor Standards Act ("FLSA") and the Trafficking Victims Protection Act ("TVPA").

## PELIMINARY STATEMENT

      This case is about human trafficking for profit. Over the past few years, Plaintiff and other similarly situated immigrant workers have been systematically defrauded and exploited in the recruitment and hiring process in numerous countries by Defendants. Defendants utilized the promise of a unique opportunity to work in the United States to entrap them into a psychologically coercive and financially ruinous trafficking scheme that subjected the Plaintiff and other similarly situated immigrant workers to exorbitant debt, forced labor, substandard living conditions and substandard wage rates. Once in the United States, Plaintiff and other similarly situated immigrant workers were further abused and exploited by Defendants, who

used a variety of coercive tactics, including the abuse of legal process, isolation, threats of physical violence, and threats of deportation to attempt to control the Plaintiff and other immigrant workers' actions. The United States government has declared the Plaintiff is a victim of human trafficking. Defendant Michael V. Lombardi is serving a sentence in Federal Prison for his role in this same human trafficking scheme.

## PARTIES

1.      Plaintiff, Gagah Alamsyah, is a national of Indonesia and resides in Metarie, Louisiana.

2.      Defendant, Michael V. Lombardi, is an individual that resides at 11096 47th Road N. West Palm Beach, FL 33411.

3.      Defendant, U.S. Opportunities, LLC, is a corporation that is incorporated in Florida, and may be served through its registered agent Michael V. Lombardi, 11096 47th Road North, West Palm Beach, Florida 33411.

4.      Defendant, Royal Hospitality Services, LLC, is a corporation that is incorporated in Louisiana, and may be served through its registered agent Samuel Nikoghosyan, 237 N. Peters Street, 4th Floor, New Orleans, Louisiana 70130. Royal Hospitality appeared in this case prior to severance.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over this action pursuant to 28 U.S.C. section 1331 (federal jurisdiction), 18 U.S.C. section 1595(a)(civil trafficking), and Section 16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. section 216(b). The Court has supplemental jurisdiction over the state law causes of action asserted in the Complaint pursuant

to 28 U.S.C. section 1367 because the state law claims form part of the same case or controversy as the federal law claims.

6.      Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

7.      Venue is also proper in this District pursuant to 18 U.S.C. Section 1965(a) because some or all Defendants reside, are found, have agents, and/or transact his/her/its affairs in the Southern District of Mississippi.

8.      Venue is also proper in this District pursuant to 18 U.S.C. Section 1965(b) because the ends of justice require that other parties residing in other districts be brought before this Court.

## STATEMENT OF FACTS

9.      Plaintiff is one of many foreign nationals who were trafficked from Indonesia by Defendants in 2009.

10.      Plaintiff held an H-2B visa, which allows U.S. employers to bring foreign nationals to the United States to fill temporary nonagricultural jobs. These visas are usually valid for one year but can be extended up to three (3) years.

11.      Defendants operated a trafficking scheme to recruit Plaintiff and other immigrant workers from several countries for work in various locations in the United States.

12.      Defendant Lombardi fraudulently misrepresented to the Department of Labor that various employers needed more H-2B workers then they actually needed. Lombardi then submitted applications for the employers that did not require laborers and used the employers as sponsors on the H-2B visas.

13.     Plaintiff was recruited in Indonesia by a recruiting company called Qi Kai and promised a job at Cody Concepts. U.S. Opportunities and Lombardi worked in conjunction with the recruiting company by providing a false job offer to Plaintiff and acting as a contact in the United States.

14.     Plaintiff was coerced into signing loan agreements in order to pay for his visa fees.

15.     Plaintiff was misled to believe that his loans could easily be paid with the money he would be making.  Instead, he was placed in a job paying so little he could not afford to pay for his living conditions, much less pay his loans back.  Defendants U.S. Opportunities and Lombardi in collusion with The recruiting company made false promises to Plaintiff to induce Plaintiff into taking large high interest loans to pay "recruiting fees."

16.     These same recruiting fees were later used against Plaintiff to force Plaintiff to continue working at the jobs designated by Defendants.  Plaintiff received threats of serious financial harm from the lending companies.  The lending companies threatened workers, like Plaintiff, that they would confiscate family property in the Philippines, have them arrested and even threatened physical harm.[1]

17.     U.S. Opportunities and Lombardi were active participants in the scheme that: 1) recruited Plaintiff by means of false promises 2) induced Plaintiff to go into debt, and 3) threatened Plaintiff with serious harm if Plaintiff failed to pay back that debt. Plaintiff believed that if they did not perform the required labor they would suffer serious harm. The threat of serious harm from the lending companies prevented Plaintiff and others from fleeing RHS.

---

[1] See e.g. Rec. Doc. 234, Ex. 18, 118:17-119:09 (Verzo's family was harassed by Asialink Finance Corporation in the Philippines.  His sister actually moved due to the harassment); Rec. Doc. 234, Ex. 11, 119:107-21 (Jabagat is afraid to visit his family because his debt to the lending company has gotten so big and he is afraid they will hire someone to kill him).

18.     RHS threatened serious harm to workers like Plaintiff as well, including threatening arrest, deportation and physical harm.[2]  Lombardi and U.S. Opportunities acted in concert with both the lending companies and RHS in making these threats. *U.S. v. Askarkhodjaev*, 2010 WL 4038783, *3-5 & nn.4-11 (W.D. Mo. Sept. 23, 2010) (rejecting argument that indirect general threats to group of workers about immigration status could not provide a basis for liability under § 1589); *U.S. v. Garcia*, 2003 WL 22956917, *4 (W.D.N.Y. Dec. 2, 2003) ("'provisions within section 1589 only require a showing of a threat of "serious harm," or of a scheme, plan, or pattern intended to cause a person to believe that such harm would occur'" [citation omitted]).

19.     Upon information and belief all the Defendants knowingly benefited financially from the labor provided by Plaintiff.  Lombardi and U.S. Opportunities received financial compensation from the recruiting companies in payment for their role in obtaining the visa approval and providing the Plaintiff to RHS.  RHS received financial compensation from the Beau Rivage for providing the Beau Rivage with labor.

20.     Immediately prior to boarding the plane for the United States Plaintiff was told he would be going to Biloxi, Mississippi.  After arriving in Biloxi, Plaintiff was picked up by agents of RHS and told he would be working at the Beau Rivage.  RHS told Plaintiff that they would renew his visa and pay him a good wage.   Believing this, Plaintiff signed a contract with RHS in October 2009. Initially, RHS took and withheld Plaintiff's visa documents.

---

[2] See e.g. Rec. Doc. 234, Ex. 10, 61:11-15 (Artur threatened Delia Duenas that she arrested working without a visa); Rec. Doc. 234, Ex. 12, 91:03-09 (RHS threatened De La Puerta "not to do anything that they would not like, because if [he did], something's going to happen that we also don't like" because RHS told him they [had a lot of contact from police station, and they also had contact from Immigration, that they could deport us."); Rec. Doc. 234, Ex. 16, 78:17-22 (After Jusayan's friend Guzman ran away, Artur threatened "Guys, if you follow what Mr. De Guzman did, you are putting yourself into danger.").

21.     The new contract allowed for payment on a per room basis rather than the hourly basis promised in his original contract.

22.     Defendant RHS never paid or offered to pay for Plaintiff's visa fees as required by the federal visa program.  Instead RHS fraudulently misrepresented to Plaintiff that Plaintiff was responsible for payment of those fees.

23.     Plaintiff worked for RHS from October 2009 to March 2010.  During this time Plaintiff performed work before and after clocking in for the day, including stocking and preparing his cleaning cart.  Further, Plaintiff often was not properly paid minimum wage and/or overtime

24.     Despite poor living conditions, Plaintiff was charged exorbitant amounts for rent, which RHS deducted directly out of his paycheck.

25.     When it came time to renew his H-2B visa, RHS deducted money directly from Plaintiff's paycheck.  When the visa arrived, Plaintiff was surprised to discover it was a tourist visa rather than an H-2B visa.  When Plaintiff complained that a tourist visa was not a working visa, Defendant Royal Hospitality told him he was allowed to work at the Beau Rivage with a tourist visa. Knowing the harm threatened by the lending companies against Plaintiff, RHS used the threat of deportation to keep the Plaintiff from fleeing. *See, e.g.*, *U.S. v. Dann*, 652 F.3d 1160, 1172 (9th Cir. 2011) (threats of deportation or being sent back to Peru "could constitute serious harm to an immigrant"); *U.S. v. Calimlim*, 538 F.3d 706, 710 (7th Cir. 2008); *Ruiz v. Fernandez*, __F.Supp.2d __, 2013 WL 2467722, *20 (E.D. Wash. June 7, 2013).

26.     Plaintiff was certified by the Department of Health and Human Services as a victim of Human Trafficking.

## COUNT I

## THE WILLIAM WILBERFORCE TRAFFICKING VICTIMS PROTECTION

## REAUTHORIZATION ACT OF 2008 (18 U.S.C. § 1595)

27.     Plaintiff re-alleges and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

### A.     <u>Authority for a Civil Action</u>

28.     Plaintiff is a victim of the following violations of Title 18, Chapter 77 of the United States Code: 18 U.S.C. Sections 1589, 1590, 1592, and 1594(a) and (b).

29.     As set forth in 18 U.S.C. section 1595(a), Plaintiffs may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in a violation" of these provision.

30.     Defendants were perpetrators of the violations of 18 U.S.C. sections 1589, 1590, 1594(a) and 1594(b), and/or knowingly benefitted financially from participation in a venture which they knew or should have known engaged in a violation.

31.     Defendants Lombardi, and US Opportunities in coordination with employment agencies in the Indonesia, made false promises of work to Plaintiff in order to traffick him to the United States.  Upon arrival into the United States, Lombardi and U.S. Opportunities funneled Plaintiff to RHS in order to fill their worker requirements to the Beau Rivage.  Plaintiff was then threatened with serious harm by the loan companies in order to keep Plaintiff from fleeing.  RHS knowingly participated in this venture by accepting the benefits of Plaintiffs work when it knew or should have known that these workers were illegally trafficked by Lombardi and overseas

employment agencies who were in violation 18 U.S.C. sections 1589, 1590, 1594(a) and 1594(b).

## B.    Forced Labor (18 U.S.C. § 1589)

32.     Defendants acquired the labor of Plaintiff by means of abuse and threatened abuse of law or legal process and by means of a scheme, pattern, or plan intended to cause Plaintiff to believe that, if he did not perform the labor, he would suffer serious and detrimental harm, including, deportation. Lombardi and U.S. Opportunities were an intricate part of a scheme whereby Plaintiff was recruited, indebted to lending companies, and threatened with serious financial harm if Plaintiff did not continue working to pay back the loans borrowed.  The purpose and effect of this scheme was to cause Plaintiff to believe that if he did not perform the required labor he would suffer serious harm.

33.     Lombardi and US Opportunities, along with RHS, used threats of force and abuse of process to obtain the labor of their victims.  For example, Defendants threatened to turn victims over to immigration authorities or police[3], issued the wrong visas in order to keep victims from contacting authorities (with the threat that, because they were under the wrong visa, they'd be arrested if they tried to complain)[4], threatened to kick them out of their apartments[5], and physically intimidated witnesses[6], etc.

34.     Serious harm can be perceived by persons under similar and surrounding circumstances and while threats may not have been made to each individual victim, the threats to

---

[3] *See e.g.* Rec. Doc. 234, Ex. 18, 153:6-7 (Artur and Marat threatened to deport Verzo if he stopped working at RHS;

[4] *See e.g.* Rec. Doc. Rec. Doc. 234, Ex. 5, 139:04-10, 218:04-17 (Ramos was given a renewal form for an H2B visa and RHS he received a Tourist visa.  RHS threatened to deport Ramos)

[5] *See e.g.* Rec. Doc. 234, Ex. 16, 33:07-21 (Artur threatened to make Jusayan "sleep outside in the street", Artur then took Jusayan and his companions passports and told them he would deport them if they did not sign the contract with RHS).

[6] *See e.g.* Rec. Doc. 234, Ex. 16, 78:17-22 (After Jusayan's friend Guzman ran away, Artur threatened "Guys, if you follow what Mr. De Guzman did, you are putting yourself into danger.").

victims of the group are threats of harm to all under the law. *U.S. v. Askarkhodjaev*, 2010 WL 4038783, *3-5 & nn.4-11 (W.D. Mo. Sept. 23, 2010) (rejecting argument that indirect general threats to group of workers about immigration status could not provide a basis for liability under § 1589); *U.S. v. Garcia*, 2003 WL 22956917, *4 (W.D.N.Y. Dec. 2, 2003) ("'provisions within section 1589 only require a showing of a threat of "serious harm," or of a scheme, plan, or pattern intended to cause a person to believe that such harm would occur'" [citation omitted]).

35.     Defendants U.S. Opportunities, Lombardi and RHS knowingly benefitted financially from participation in a venture which they knew or should have known was engaged in these acts. Lombardi and U.S. Opportunities knowingly participated in the venture to traffic the Plaintiff and others to the United States by working with Adman in a scheme to deliver Plaintiff to the United States and ensure Plaintiff believed he would suffer serious harm if he did not complete the required labor. Lombardi and US Opportunities received money from companies to which they provided victims. The companies paid Lombardi and U.S. Opportunities, who then underpaid the victims. RHS knowingly benefited from this venture by profiting from the Plaintiff's labor and threatening the Plaintiff with deportation and other serious and detrimental harm.

### C.     Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. § 1590)

36.     Defendants aided and abetted the recruitment and transportation of Plaintiff and other foreign nationals for labor and services in violation of 18 U.S.C. sections 1589, 1592, 1594(a), and 1594(b). Defendants U.S. Opportunities and Lombardi in collusion with the recruiting agencies made false promises to Plaintiff to induce Plaintiff into taking large high

interest loans to pay "recruiting fees." These same recruiting fees were later used against Plaintiff to force Plaintiff to continue working at the jobs designated by Defendants.

37.     Defendants knowingly benefited financially from participation in a venture which they knew or should have known was engaged in these acts.

**D.      Attempt and/or Conspiracy to Violate 18 U.S.C. Sections 1589, and 1590 (18 U.S.C. § 1594(a) and (b)).**

38.     Defendants attempted and/or conspired to violate 18 U.S.C. Sections 1589 and 1590 in violation of 18 U.S.C. Section 1594(a) and (b) through a common scheme to cause Plaintiff to believe that if he did not perform the required labor he would suffer serious harm.

39.     Defendant Lombardi/US Opportunities conspired with Defendant RHS to profit off the labor of Plaintiff and other foreign nationals.

40.     Defendants Lombardi/US Opportunities and RHS knowingly benefited financially from participation in a venture which the Defendants knew or should have known was engaged in these acts.

**E.      Damages**

41.     As a proximate result of the conduct of Defendants, Plaintiff has suffered injuries to his persons and property along with other damages.

**COUNT II.**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

42.     Plaintiff is a non-exempt employee and is subject to the provisions of the Fair Labor Standards Act as it pertains to whether or not Plaintiff is entitled to minimum wages and overtime pay for all hours over forty (40) hours worked in a given week.

43.    The Fair Labor Standards Act requires that employees be paid minimum wages and overtime compensation at a rate not less than one and one-half (1 ½) times minimum wage rates or their regular rate of pay if it is higher.  29 U.S.C. § 207(a).

44.    Plaintiff has not been paid minimum wages and/or overtime compensation under the Fair Labor Standards Act at a rate of 1 ½ his regular pay.

45.    The acts of Defendant RHS constitute a willful intentional violation of the Fair Labor Standards Act.

## DAMAGES

46.    WHEREFORE, Plaintiff requests the following relief:

a.    Compensatory damages;

b.    Overtime pay and minimum wages;

c.    Liquidated damages;

d.    Punitive damages;

e.    Attorney fees and costs; and

f.    Such other relief as the Court deems just and appropriate.

THIS, the 22nd of April, 2015.

Respectfully submitted,

/s/ Benjamin Ruemke_____

Benjamin Ruemke
Ryan Hicks
Peter Schneider
SCHNEIDERWALLACE
COTTRELL KONECKY, L.L.P.
3700 Buffalo Speedway # 1100
Houston, Texas 77098
Telephone: 713-338-2560
Fax: 866-505-8036
pschneider@schneiderwallace.com

rhicks@schneiderwallace.com
bruemke@schneiderwallace.com
*Admitted Pro Hac Vice*

Joseph C. Peiffer
PEIFFER ROSCA WOLF
ABDULLAH CARR & KANE PLC
201 St. Charles Ave. Suite 4610
New Orleans, LA 70170
Tel: 504-586-5259
Fax: 504-388-3912
www.prwlegal.com
*Admitted Pro Hac Vice*

**Attorneys for Plaintiff**

# CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of April, 2015 a true and accurate copy of the foregoing document has been delivered to Royal Hospitality Services by certified mail, return receipt requested.

_\_\_\_ /s/ Benjamin Ruemke \_\_\__